HENRY H. HUSTIS, DEFENDANT IN ERROR, v. JAMES A. BANISTER COMPANY, PLAINTIFF IN ERROR.

Argued March 1, 1899—Decided June 12, 1899.

1. A master, charged with the duty to use reasonable care that overhead shafting in a factory shall be supported and maintained so as not to endanger the safety of servants working underneath it, cannot escape liability for breach of that duty by delegating its performance to an engineer placed in charge of the machinery in the factory.
2. Inspection and repair necessary to the safe support and maintenance of overhead shafting in a factory is not to be considered as merely incidental to the running of the engine with which the shafting is connected.

On error to Essex County Circuit Court.

Before MAGIE, CHIEF JUSTICE, and Justices GARRISON, LIPPINCOTT and COLLINS.

For the plaintiff in error, *Henry H. Dawson* and *Richard V. Lindabury.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

COLLINS, J. This writ of error removes a judgment recovered on verdict by a servant against his master (a corporation) for personal injuries resulting from an alleged breach of the master's duty to use reasonable care for the safety of the servant. Error is assigned upon exceptions sealed at the trial. It was in proof that the general care of the mechanical equipment of the defendant's shoe factory in Newark was entrusted to its treasurer, Mr. John W. Denny. Under him was Charles F. Carr, an engineer and machinist, who ran the engine and inspected and repaired all machinery, reporting to Mr. Denny such defects as he could not himself remedy. In July, 1897, the factory was shut down for general overhauling. Shortly before this a loose coupling had been noticed

in a line of heavy overhead shafting, suspended from the ceiling in a hanger, which line, therefore, received special attention. An expert mechanic, whose firm was called in by Mr. Denny to make examination and repairs, advised that this shafting should be taken down, but, on instructions received indirectly from Mr. Denny, undertook to repair it in place. He testified that he observed a bend in one of the coupled pieces that threw the shaft out of alignment. To remove such a bend, firing and straightening is necessary. When called as a witness for the defence, this mechanic testified that he thought the bend so slight as not to be dangerous, but he admitted that an "excessive" bend would put a strain on hanger and coupling under which they might give way. The repairs were finished July 19th. Witnesses for the plaintiff testified that on Saturday, July 31st, a bolt broke and fell out of the coupling and was taken to the engineer, Carr. On the morning of Tuesday, August 30th, another bolt broke and fell out. This was taken to Carr, who testified that he replaced it at the noon hour. He failed to remember the occurrence of Saturday. On Tuesday afternoon, while the plaintiff was at work sorting shoe soles under this shafting, the coupling gave way and the hanger broke, letting down a heavy piece of shafting, which struck the plaintiff and caused the injuries for which he brought suit. There was much other evidence, but the foregoing is all I deem needful to cite.

Two of the exceptions presented in argument relate to the admission of testimony. The plaintiff was allowed to prove knowledge by the defendant's president of the condition of the shafting previous to its fall. The proof was of the president's admission of such knowledge; and had the objection been put on the ground that such an admission was not evidential against the corporation, I should think it erroneous to have allowed it to be proved. But such was not the case, and the defendant ought not be heard to complain now of a matter not brought to the attention of the trial judge. The president was afterward called as a witness and denied any such knowledge. It was competent to contradict him by

proof of his inconsistent admission, and that this was done out of time, although irregular, was not harmful. The other exception was to the admission, on rebuttal, of proof relative to the character of the plaintiff's injuries; that, it is claimed, should have been offered in chief. Without closely analyzing the evidence to see if the claim is well founded, it is sufficient, to deny effect to this exception, that the order of proof is always discretionary with the trial judge. Counsel concede this, but complain of an "unlawful exercise of the court's discretion," which seems to me a contradiction in terms. No surprise was pleaded at the trial, nor was time asked to meet the new proof. I find no reversible error presented by either of these exceptions.

Another exception presents the court's refusal to nonsuit the plaintiff or to direct a verdict for the defendant. The brief recital, above given, of evidence in the cause amply vindicates such refusal. The case was one for the jury.

Refusal to charge certain requests made in behalf of defendant needs no further attention than to say that such requests were hypothetical and partial and demanded no direct response, the charge that was given on the subjects embraced being unchallenged and unexceptionable. *Consolidated Traction Co.* v. *Chenowith*, 29 *Vroom* 416; affirmed, 32 *Id.* 554.

This brings me to the stress of the argument with which we were favored, resting on exceptions to the court's refusal to charge the following requests :

(4) "If the breaking of the bolts in the coupling on the day of the accident and on the preceding Saturday were an indication that it was undergoing too great a strain, and was liable to break in consequence, defendant is not chargeable with knowledge of such indication, simply because such knowledge came to the engineer, Carr, nor is it responsible for Carr's failure to heed it.

(6) "If the coupling broke on account of the failure to make incidental inspection or incidental repairs, the defendant is not liable.

(7) "A master's duty to preserve machinery in fit condition

for use, and to that end to reasonably examine whether or not it becomes unfit or unsafe from wear and tear, or otherwise, may be discharged by selecting and appointing a competent person engaged in using it to make inspection and repairs. For injuries arising to a co-employe by reason of the failure of a person so selected either to inspect or repair, the master is not liable.

(8) " The engineer, Carr, who ran the machinery in the defendant's factory, was a co-employe with the plaintiff, and was, in the eye of the law, engaged in using the shaft which broke in the common employment."

These requests the judge denied, and on their general subject he instructed the jury as follows:

" I have been requested, gentlemen, to charge you that for any injury resulting to the plaintiff in consequence of the negligence of Carr, there can be no recovery, because Carr was a fellow-servant with the plaintiff. If the injury resulted from any careless, negligent act on the part of Carr, to which no negligence of the defendant contributed, that would undoubtedly correctly express the rule of law applicable to the relation of the master and servant. But in this case the only evidence of negligence, if there is any evidence of negligence on the part of Carr, is that he did not make needed repairs. In other words, it is insisted that Carr did not perform the duty imposed on the master by the contract of hiring. * * * If the performance of this duty was confided to the engineer, and he performed the duty, that shows performance of the duty by the defendant. If the performance of the duty was given to the engineer and not performed by him, then the fact that the performance of this duty was delegated by the defendant to the engineer will not relieve the defendant of responsibility for the non-performance of the duty arising out of the contract of hiring."

This instruction conformed to the declaration of the law by the Court of Errors and Appeals, in the case of *Steamship Co.* v. *Ingebregsten,* 28 *Vroom* 400 ; reaffirmed in *Comben* v. *Belleville Stone Co.,* 30 *Id.* 226 ; *Belleville Stone Co.* v.

*Mooney*, 32 *Id.* 253, and *Curley* v. *Hoff*, 33 *Vroom* 758. Counsel for the plaintiff in error wasted no time in the fruitless task of combatting that settled doctrine, but confined their argument to the contention that this case falls within the distinction drawn in the cases cited, viz., that inspection or repair incidental to use by a servant, of machinery or implements, is the servant's, not the master's, duty. Of negligence in the performance of such incidental duty, other servants, as in case of any negligence of their fellows, take the risk. To illustrate, an engineer while running his locomotive must not only watch its steam-gauge and the working of its mechanism, but may also need to have resort to his repair-kit. For neglect of such duties his master is not liable to other servants in common employment with him. Simple or complex, the use of any instrumentality of human action involves some inspection and may involve repair because of that very use. It is with such inspection and such repair only that the law charges the servant to the relief of the master, and it is plain that the use must be direct. The engineer runs, and therefore must inspect, his engine, but not the shafting or machinery to which he transmits power. The turner runs, and therefore must inspect, his lathe, but not the shaft that brings him power. Inspection while in use and inspection incidental to use are not convertible expressions. There may be inspection of moving mechanism devolving on no servant, but on the master. If so, negligence in that inspection or failure to properly repair defects discovered will be chargeable on the master, although he may select as the agent to perform his duty a fellow-servant of those to whom he owes such duty. The test is always whether or not the duty left unperformed was the master's duty. In the case in hand it was properly left to the jury to say whether reasonable care for the safety of the workmen in the defendant's factory required inspection and repair of the line of shafting that fell and injured the plaintiff. If so, that duty could not be discharged by delegation except at the master's peril, although the agent chosen was a fellow-servant of the plaintiff.

Properly this case should not be considered as one involving the operation of machinery, but as one involving a place of working. That the support of a suspended piece of iron was rendered precarious by its motion in connection with machinery, is an immaterial circumstance. The question for the jury was whether or not the defendant used reasonable care that what it set up over the heads of its servants should not fall down upon them. The requests to charge were properly denied.

No error appearing, let the judgment be affirmed.