JOHN D. McCORMICK, PLAINTIFF BELOW AND PLAINT-
IFF IN ERROR, v. JOHN S. ANISTAKI, DEFENDANT IN
ERROR.

Submitted March 26, 1901—Decided June 17, 1901.

1. One S. was the owner of two adjoining buildings, known as Nos.
101 and 103 North Broad street, located at the corner of Broad
and Hanover streets, with a front on Broad street. On the
Hanover street side there was an entrance, with a hallway leading
to the stairs, which were constructed by the owner for the purpose
of reaching the second and third stories. The building No. 101,
at the corner of Broad and Hanover streets, was leased to the
defendant for a term which would not expire until April 1st,
1902, and was occupied by him as a drug store. The upper
stories of that building were sublet by him to tenants. In the
hallway, close to the door leading to Hanover street, was a hatch-
way, covered with a trapdoor, which was used by the defendant
in connection with his drug business as a hoistway for the pur-
pose of raising and lowering merchandise to and from the cellar.
The adjoining building, No. 103, was leased to one Johnson. The
stairway and the hallway entrance were in the building when it
was built, fifty years ago, but the entrance from the stairway to
the second story of the Johnson building was made about 1888.
The defendant's lease for No. 101 was dated in 1897. The plaint-
iff was a tenant under Johnson of a room in the second story
of No. 103. He became a tenant in 1892, which was five years
before the date of the defendant's lease. The lease to Johnson
was dated in 1890. The Hanover street entrance to the second
story of the Johnson building was made and in use four years
before the plaintiff became a tenant. *Held*, that S. being the
owner of both buildings, and having made changes in their struc-
ture so as to enable the tenants of the upper stories of the Johnson
building to have access to the street through this hallway and the
Hanover street entrance, his lease to Johnson created in the latter
and his under-tenants a right to the use of the hallway and door-
way in the nature of an easement.

2. The plaintiff, on the morning of May 31st, 1898, on entering from
Hanover street through this hallway, on his way to his place of
business, was precipitated down in the cellar, sustaining serious
injury, by reason of the trapdoor being raised and the hatchway
being used at the time as a hoistway by one of the defendant's
clerks. *Held—*

1. That the plaintiff was lawfully in the use of this hallway, under
a right derived from the owner of both premises, and not by the
mere license, permission or consent of the defendant.

2. That both parties being entitled to the use of the hallway,

inasmuch as the hatchway was for the use of the defendant, the duty devolved upon him to use reasonable care to keep the place reasonably safe for the use of the tenants of the second story of the Johnson building.

3. That if the plaintiff was in the use of this entrance and hallway not under a right derived from the owner, the evidence showed that he was there by such invitation of the defendant, express or implied, as put upon him the duty to exercise reasonable care to render the hallway reasonably safe for such use—at least to abstain from any act that would make the entry upon and use of the hallway dangerous.

On error to the Supreme Court.

For the plaintiff in error, *John H. Backes.*

For the defendant in error, *James Buchanan.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. This action was brought to recover damages for an injury sustained by the plaintiff (McCormick) in falling through an open hatchway in the hallway of a building located at the corner of Hanover and Broad streets, in the city of Trenton. The building had its front on Broad street, and the hallway in question led from the Hanover street entrance to the stairs, which were constructed for the purpose of reaching the second and third stories. The building was owned by Edward Stokes, as trustee, and was known as No. 101 North Broad street. Stokes was also the owner of the next adjoining building, known as No. 103 North Broad street. The adjoining building was leased by Stokes to one Charles Johnson. The letting was by a written lease, made January 22d, 1894, for the term of three years, with the privilege of renewal for two additional years. On the back of this lease was a consent, signed by Stokes, that the lessee might re-let the premises to parties agreeable to the landlord. The plaintiff, at the time of the accident in question, was a tenant of the second story of the Johnson building. He testified that he had occupied that place since the summer of 1892, and that he is the tenant of Johnson.

The defendant (Anistaki) was the tenant of No. 101, which was the building at the corner of Broad and Hanover streets, by a lease from Stokes, which was dated January 18th, 1897, and was for a term of five years from the 1st day of April, 1897. The term created by this lease will not expire until April 1st, 1902. The letting of these premises to the defendant was for use and occupation as a drug store and business appertaining thereto, with the privilege of re-letting the upper floors. The room on the Broad street front was occupied by the defendant as a drug store. The upper stories were sublet by him to tenants.

The hallway in question was in the rear of the drug store, and was used by the tenants of the defendant, to whom the upper stories had been let, and by the defendant himself. In the hallway, close to the door leading to Hanover street, was a hatchway, which was used by the defendant in connection with his drug business as a hoistway for the purpose of raising and lowering merchandise to and from the cellar under his drug store. This hoistway was about four or five feet square, and was co-extensive with the floor of the hallway, extending from the doorsill of the street doors to the bottom riser of the flight of stairs. When not used for the purpose of hoisting or lowering goods, the hatchway was covered with a trapdoor. When the trapdoor was up the entire floor space in the hall was open, and when it was closed it formed a passage-way between the street doors and the stairs. The Hanover street doors opened in over the hatchway. The evidence was that it was the practice of the defendant, while using the hatchway as a hoistway, to have the Hanover street doors always locked and securely fastened, and the defendant's clerks would be stationed inside to warn people going downstairs.

The plaintiff had access to the part of the premises leased to him through the Hanover street entrance and through the hallway and up the stairway. He testified that he has always been going into his place of business in that way; that he never went in any other way since he occupied the premises. He testified that when he got to the head of the stairs at

the landing on the second story, a narrow hallway led from the stairway to a door leading into his rooms. Stokes testified that the stairway had been there since the premises were built, fifty years ago, but the entrance from the stairway to the second story of the Johnson building was made about eleven years ago. It was made for the purpose of enabling the tenants of the second story of the Johnson building to use the Hanover street entrance. He also testified that the defendant was his tenant at the time when the door which was the entrance-way to the second story of the Johnson building was cut through, and that he has been his tenant ever since. Eleven years before the day of trial would fix the time at which this connection was made as in 1888. The defendant's lease produced was dated in 1897. The plaintiff became a tenant of the premises in 1892, which was two years prior to the date of the lease to Johnson, produced at the trial, and five years before the date of the defendant's lease that is in evidence. The Hanover street entrance to the second story of the Johnson building was made and in use four years before the plaintiff became the tenant. At the time the entrance to the second story of the Johnson building was constructed Stokes was the owner of both buildings, and the fair inference from his evidence is that this mode of access was constructed either by him or with his consent.

By the record it appears that Johnson, as the principal tenant, acquired a right to the use of this hallway and stairs as an entrance to his second-story rooms, as between him and Stokes, three years before the defendant acquired his rights in the passage-way under the lease in evidence, and that the plaintiff had acquired a right to use the hallway for the purposes for which he was using it at the time of this accident five years before the defendant's rights accrued. Stokes being the owner of both buildings, and having made changes in their structure so as to enable the tenants of the upper stories of the Johnson building to have access to the street through this hallway and the Hanover street entrance, his lease to Johnson created in the latter and his under-tenants a right to the use of the hallway and doorway in the nature

of an easement, of which neither Johnson nor his under-tenants could be deprived by the subsequent lease to the defendant. The defendant, by his lease, took a leasehold estate, subject to such alterations and changes as had been made by the owner antecedently in the premises demised for the advantage of the Johnson building. In this view of the case, the plaintiff was lawfully in the use of this hallway at the time of this occurrence, under a right derived from the owner of both premises, and not in any manner by license, permission or consent of the defendant. Both parties were entitled to the use of the hallway, and inasmuch as the hatchway was for the use of the defendant, the duty devolved upon him to use reasonable care to keep the place of entrance safe for the use of the tenants of the second story of the Johnson building.

The plaintiff testified that on the 31st of May, 1898, about half-past eight o'clock in the morning, he went from his home to his place of business as usual; that the doors of the Hanover street entrance were simply closed; that he stepped up to the door, touched the knob and gave a push; that the door opened, and he was precipitated down in the cellar, sustaining serious injury; that the front doors were not fastened, and that the cause of his fall was that the trapdoor was raised, the hatchway being used at the time as a hoistway by one of the defendant's clerks.

It is quite clear that leaving the hatchway open, as disclosed by the evidence, was a negligent act, for which the defendant would be liable to the plaintiff in damages, provided the situation was such that the plaintiff was entitled to maintain an action. The case was so regarded at the trial and by counsel on the argument here.

At the trial the plaintiff was nonsuited. The motion to nonsuit was made upon two grounds:

*First.* That it appears by the plaintiff's own showing that he is a mere licensee, to whom no duty is owed by the defendant. The plaintiff has failed to present any evidence that shows that his entry at the time of the accident, over the premises of the defendant, was by right, or that he made such

entry by the inducement or invitation, expressed or implied, of the defendant, and that therefore the plaintiff, by his own showing, occupies the position of a mere licensee.

*Second.* On the ground of contributory negligence. The court granted the nonsuit without indicating upon which of the grounds it was granted.

It has already been said that by the record the plaintiff was in the lawful use of this passage-way for the purpose of access to his rooms, under a right derived from Stokes, the landlord, and independent of any license, permission or consent of the defendant. But the case was argued here by the defendant's counsel on the theory that the plaintiff was a mere licensee, to whom the defendant was under no obligation to provide a safe hallway or a safe passage over the hatchway.

The law on this subject is entirely settled in this state. A mere licensee has no cause of action on account of the dangers existing in the place he is permitted to enter. Mere permission to pass over dangerous lands, or acquiescence in such passage for the benefit or convenience of the licensee, creates no duty on the part of the owner, except to refrain from acts willfully injurious. But the owner or occupier of lands who, by invitation, express or implied, induces persons to come upon the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes, or at least to abstain from any act that will make the entry upon, or use of, the premises dangerous. *Phillips* v. *Library Co.*, 26 *Vroom* 307; *Devoe* v. *New York, Ontario and Western Railway Co.*, 34 *Id.* 276. In *Turess* v. *New York, Susquehanna and Western Railroad Co.*, 32 *Id.* 314, 318, Chief Justice Magie said: "Invitation which creates such a relation may be express, as when the owner or occupier of land, by words, invites another to come on it, or make use of it or something thereon; or it may be implied, as when such owner or occupier, by acts or conduct, leads another to believe that the land, or something thereon, was intended to be used as he uses them, and that such use is not only acquiesced in by the owner or occupier, but is in accordance with the intention or design for which the way or place or thing was adapted

and prepared or allowed to be used." This definition was originally given in *Sweeny* v. *Old Colony Railroad Co.,* 10 *Allen* 368, and was approved and adopted by this court in Phillips *v.* Library Co. The Chief Justice then continued: "It will be observed that, in the case of an implied invitation, the relation is imposed upon the owner or occupier of land only when he has done something which justifies one who enters upon the land and makes use of it, or something upon it, in believing that he intended such use to be made, and he who makes such use can claim the relation only when he is justified by the acts or conduct of the owner or occupier in believing that such use was intended. And entry and use by such invitation are thus distinguished from entry and use by mere permission." It is sometimes difficult to determine whether the circumstances make a case of invitation or of a license only. The proof necessary to sustain the action must be found in the circumstances of the particular case. In such cases, if there be evidence tending to show inducement or invitation, it becomes a question of fact for the jury whether the conditions exist under which a legal duty is imposed upon the owner of the premises to exercise care for the plaintiff's safety.

The plaintiff testified that since 1892, during which time he had occupied the premises, he had used the hallway and passage-way at his pleasure, without interference or molestation. That circumstance, standing alone, would not create in him a right in the premises; for acquiescence by the owner is not sufficient to impose on him liability for an injury resulting from the situation of the premises. Thus far, the utmost that could be said of him is that, as a licensee, he was not a trespasser in the use of the hallway. But there is other evidence on this subject. The plaintiff is a printer, and carried on his business in the second story of the Johnson building. He testified that when he moved in and took possession of the premises he had some heavy presses, castings and paper cutters to put in the premises, and that the defendant allowed him to use his elevator and hoisting apparatus for that purpose. He testified also that a week or two after he

had been in there he wanted to put up signs for his business on the Hanover street front; that he wanted to put up signs on both of the doorjambs, and the defendant objected that his tenants would need some room for signs, and that he had a sign put up at the defendant's suggestion, having it put high up on the westerly doorjamb. This evidence was competent on the question as to whether the use of this entrance and hallway was not by invitation of the defendant, taking that word in its legal sense, as an inducement to the plaintiff to use this hallway for an entrance.

Nor was the evidence sufficient to justify the inference, as a matter of law, that the plaintiff was guilty of contributory negligence. In any view that may be taken of this case the nonsuit was not justified.

The judgment should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GUMMERE, COLLINS, FORT, GARRETSON, HENDRICKSON, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM.    15.