THE RECTOR, WARDENS AND VESTRYMEN OF THE CHURCH OF THE HOLY COMMUNION, DEFENDANTS IN ERROR, v. THE PATERSON EXTENSION RAILROAD COMPANY ET AL., PLAINTIFFS IN ERROR.

Argued June 29, 30, 1902—Decided November 17, 1902.

1. In 1881 a railroad company located its road close to the property of a church and on which the church edifice was erected. In constructing it along the church property a cut, between sixteen and nineteen feet, was made. By reason of this excavation the wall of the church settled and cracked in the summer of 1881. Negotiations were then had between the parties, and an arrangement was entered into by the terms of which the railroad company should make the foundation and outer walls safe and secure, and that the church should, at the expense of the company, do the necessary repairs inside the church. The work outside was done by the company and it paid for the inside work the sum of $1,000, taking a receipt for the same from the church "in full settlement of all damages done by the railroad company to our church." Some time after the walls of the church began again to crack and show signs of settling, and in 1887 a considerable outlay was necessary for reparation, and a suit was brought to recover the damages sustained in 1887, and on the second trial of said suit the church recovered damages for the failure of the railroad company to make the wall safe. *Held,* that the damages resulting from the failure of the railroad company to construct a wall sufficient to make the church edifice safe and secure, was distinct from the unlawful act of the company in making the excavations in 1881 and was not discharged by the receipt given in 1882.

2. The injury for which this suit was brought was a new cause of action which arose in 1887 and the statute of limitations began to run only from that date, and this suit was brought within six years from the time those damages were sustained. *Church of the Holy Communion v. Paterson, &c., Railroad Co.,* 37 *Vroom* 218, followed.

On error to the Passaic Circuit Court.

For the plaintiff in error, *Charles L. Corbin*.

For the defendant in error, *Francis Scott*.

The opinion of the court was delivered by

VROOM, J.   This is a writ of error to the Circuit Court of the county of Passaic, and removes the judgment entered in favor of the plaintiff below upon the findings of the Circuit judge, the case having been tried by him without a jury.

The case has been before this court before, and in the opinion of Chief Justice Depue, reported in 37 *Vroom* 218, the facts on which our decision was then rested are set forth in detail.   It is sufficient for the determination of the present writ to state the facts substantially as found by Mr. Justice Dixon at the last trial in the Passaic Circuit.

In 1881 the Paterson Extension Railway Company made a contract with the New York and Scranton Construction Company to have a railroad cut constructed in the city of Paterson close to the southerly end of the property of the plaintiff below. The cut was made between sixteen and nineteen feet deep, and on the northerly side thereof a retaining wall was built.   At the base this wall rested partly on the land of the plaintiff. Then, as found by the trial judge, "by reason of the excavation, the wall of the church settled and cracked in the summer of 1881, but this was not chargeable to any lack of care or skill in the doing of the work; so far as it was chargeable to the work it was due to the design."

Negotiations were then had between the parties to this suit and an arrangement was then entered into by the terms of which the railroad company should make the foundation and outer walls of the church safe and secure and the plaintiff should do the necessary repairs inside the church at the expense of the railroad company.   And in pursuance of this arrangement the railroad company paid for the repairs inside of the church, and did certain work on the foundation and

outer walls, which apparently made them secure, but which later proved to be insufficient for that purpose.

Some time after the work above mentioned was finished the walls of the church again began to crack and show signs of settling. The cause of this, as found by the trial judge, being "that the railroad company had not carried the church foundation down below the bottom of the cut, and as the soil was sandy and had been saturated with water, the cut acted as a drain, which gradually drew away the moisture from the soil under the church foundation and caused the soil to shrink."

In the summer of 1887 the condition of the church, by reason of the settling of its walls, became so dangerous that the congregation could not safely continue to occupy it, and it was obliged to rebuild the south wall of the church on a foundation that went below the bottom of the cut, and this prevented further drainage and made the walls of the church safe and secure. The reasonable cost of these repairs was the sum of $3,850. This suit was subsequently brought to recover this amount so spent for repairs, with interest, from the railroad company.

On the first trial of this cause a verdict was directed by the trial judge in favor of the defendant upon the ground that a certain receipt given by the church to the railroad company in 1882 in "full settlement of all damages done by railroad company against our church" was a conclusive acquittance, and, on error to the Supreme Court, that judgment was affirmed, the Supreme Court holding (34 *Vroom* 470) that the receipt then given by the church on January 9th, 1882, upon the payment of the sum of $1,000 was a complete acquittance of all claim for damage by reason of the excavation. Also, that it was not competent to prove that at the time of the delivery of the writing the railroad company made an oral agreement to restore and secure the foundation of the church edifice, and further, that any cause of action of the plaintiff was barred by the statute of limitations.

This direction of a verdict for the defendant was held to be erroneous in this court (*Church of the Holy Communion* v.

*Paterson, &c., Railroad Co.,* 37 *Vroom* 218), and, in the opinion, Chief Justice Depue holds that (at *p.* 225) "the damages sued for in this case did not result from an unlawful act of the defendants in making the excavation in 1881. The digging of the cut was the occasion for requiring the erection of a wall for the protection of the church property, but was not the cause of the injury which was subsequently sustained. Nor did the damages result from the building of the wall which was done by agreement between the parties. The agreement was that the company was to build the wall at its own expense and make it safe. The wall contracted for was for the protection of the church property in the future and not a mere temporary expedient. The location, dimensions and construction of the wall and the character of its foundations were committed to the exclusive control of the railroad company. The church officers did not in any way participate in or supervise the work of construction. It is manifest that the company assumed responsibility for the protection of the church edifice from injury which might follow from the running of its trains. The first proposition in the course of negotiations was made by the officers of the church offering for the sum of $3,500 to release the railroad company from all responsibility for present repairs and future damages by reason of constructing and operating the railroad. The company declined that proposition and instead chose to the erection of a wall of the dimensions and construction that, in the judgment of its officials, would be sufficient to accomplish the purpose, paying the church for past injury to its property not a penny beyond the amount expended for reparation. The wall was located by the company within four and a half feet of the track on which the company was to run its trains. The projection of the ties brought the force of the vibrations caused by the running of the trains near to the wall. The evidence at the trial was that the wall was not properly underpinned, and the jarring of the trains passing kept jarring and settling all the time. Thereafter, from time to time, injury was done to the church property. The injury and the cause of it continued until 1887, when the damages sued for in this case were sus-

tained. The injury for which this suit was brought is entirely distinct from the injury arising from the first excavation, which was settled by the receipt of 1882. The injury which was embraced in that settlement was caused by the original excavation. The injury now sued for resulted from the defect in the wall as constructed in 1882."

On the first trial of this case it appeared that the original cause of the instability of the church wall and the consequent damages was due to the improper construction and maintenance of the railroad company's retaining wall. On the present trial the trial judge found that the origin of the difficulty to have been in the construction of the railroad cut and retaining wall in 1881, when, "by reason of the excavation, the walls of the church settled and cracked in the summer and fall of 1881, but this was not owing to any lack of care and skill in the doing of the work; so far as it was chargeable to the work it was due to the design. The retaining wall of the cut remains solid and unimpaired up to the present time."

This finding removes from the case any question as to the liability of the construction company as an independent contractor. The fault was due to the design, and the design was that of the railroad company. An independent contractor is liable in exoneration of the employer only for the defects in doing the work, and not for defects in design. *Cooley Torts* 548; *Poll. Torts* 66; *Cuff, Administratrix,* v. *Newark and New York Railroad Co.,* 6 *Vroom* 17.

The facts proved at the first trial of this case, as will appear by an inspection of the earlier opinion of this court, vary considerably from those proved at the second trial. The fundamental fact, however—the fact upon which the opinion of Chief Justice Depue rests—is the same in each, and that is the failure of the railroad company to make permanent the restoration of the church wall. The agreement of the company in 1881 was that it should make the foundation and outer walls of the church safe and secure; that this was the agreement was the finding of the trial judge at the last trial, and it was the same as that upon which the decision of this

court was based in 37 *Vroom*, although there may have been some confusion in the opinion between the terms retaining wall and the south foundation wall of the church, yet the facts which the opinion assumes to be proved on the first trial with respect to the retaining wall have been found by the trial judge on the second trial to be true of the foundation wall.

The damages for which the present finding is given are found expressly to have been the cost of the same work which should have been done by the railroad company under its agreement, viz., the rebuilding of the south wall of the church on a foundation that went below the bottom of the cut and so prevented further drainage and made the edifice safe and secure. This is what the railroad company agreed to do and failed to accomplish. No exception was taken to this finding and no opinion is intended to be expressed as to the correctness of the finding as to the measure of damages.

Clearly an action would lie against the railroad company for a breach of this agreement and it is not material what the form of the action might be, whether in tort or on contract, as was decided in this court in the former case (37 *Vroom* 226), "it is a fundamental principle of law applicable alike to breaches of contract and torts; that in order to found a right of action there must be a wrongful act done and a loss resulting from that wrongful act." It was held that future damages were not covered by the settlement of 1882, and that the injury for which this suit was brought was a new cause of action which arose in 1887, and that the statute of limitations began to run only from that date, and that this suit was brought within six years from the time the damages were sustained.

We do not perceive, as insisted here by the plaintiffs in error, that any new issues, either of fact or law, are now presented; under the law settled by the former adjudication in this court the right of the plaintiff below to recover is manifest, and this right cannot be denied without practically reversing the earlier decision of this case.

The judgment below should be affirmed.

COLLINS, J. (dissenting). For convenience I will speak of the plaintiffs below as the church and of the defendants below, indiscriminately, as the railroad company. In 1891 the church sued the railroad company, in the Circuit Court of the county of Passaic, in tort, for undermining the church edifice and for negligence and fraud in the professed performance of an agreement to restore the edifice and make safe its foundation wall. The general issue and the statute of limitations were pleaded. A verdict in favor of the railroad company was directed and the resultant judgment was affirmed by the Supreme Court. 34 *Vroom* 470. In this court there was a reversal, by a vote of six to five, the opinion being read by the late Chief Justice Depue. 37 *Id.* 218. At the new trial in the Circuit Court a jury was waived. There was a finding of facts upon which judgment in favor of the church was entered, which was brought directly to this court by writ of error. The opinion read for the court on affirmance by Judge Vroom thus concludes: "We do not perceive, as insisted here by the plaintiffs in error, that any new issues, either of fact or law, are now presented; under the law settled by a former adjudication in this court, the right of the plaintiff below to recover is manifest, and this right cannot be denied without practically reversing the earlier decision of this case. The judgment below should be affirmed."

This concedes, and rightly, that, if the facts found on the second trial differ from those assumed as proved or provable on the first trial, no legal question presented in the present record and bill of exceptions, which arises from such difference, has been foreclosed. The case is not like a second recovery. In such a case the first adjudication—however erroneous, even as to matters of fact, the conception of the court may have been—is conclusive, but in a case like the present the only inquiry is what was the legal question decided on the supposed facts before the court. Such inquiry is limited to the promulgated opinion, and cannot extend to the record. The subject of "the law of the case" is a branch of the doctrine of *stare decisis,* not of the law of *res judicata.*

The decisions to this effect are collated in a note to *Herm. Estop. & Res. Jud.* 117, 118.

It is demonstrable that the facts expressly found on the new trial differ vitally from the supposed facts dealt with in the opinion read for this court on the review of the first trial. That the writer of that opinion was under a misapprehension as to the facts is immaterial. Even if it could be assumed that the judges who voted with him rightly apprehended the facts, it would make no difference; for, as the result was reached by a majority of but one, the misapprehension of that one is inherent in the declaration of the law of the case.

The vital difference referred to will be best perceived by comparison.

| *Facts assumed in* 37 *Vroom* 218. | *Facts found on the new trial.* |
|---|---|
| THE SITUATION AT THE TIME OF MAKING THE VERBAL AGREEMENT. | |
| "The construction of the railroad in question was contracted for by the Paterson Extension Railroad Company. * * * In 1881 the road was located, not upon, but near the line of the church property on which the church edifice was erected. The railroad was projected and constructed in the early part of 1881. In constructing it along the church property the company made an excavation of from sixteen to nineteen feet below the level of the street on which the church fronted. In the process of excavation the earth on the south side of the church was almost entirely removed, and the foundation wall of the church, for a considerable distance, exposed, and the church on that side began to show signs of deterioration and damage." | "In the spring and summer of 1881 the New York and Scranton Construction Company, under its contract with the Paterson Extension Railroad Company, made a railroad cut for the latter company in the city of Paterson, close to the southerly end of the plaintiff's said lot, being between sixteen and nineteen feet deep; and on the northerly side of the cut built a retaining wall. At the base this wall rested partly on the plaintiff's land, but because of off-sets in the wall as it rose towards the surface of the ground, it was there clear of the plaintiff's land, and, at all points, was clear of the foundation wall of the church. By reason of the excavation the walls of the church settled and cracked in the summer and fall of 1881, but this was not owing to any lack of care or skill in the doing of the work; so far as it was chargeable to the work it was due to the design." |

### THE VERBAL AGREEMENT.

"In that situation negotiations were commenced. * * * Mr. Wurts testifies: 'We finally agreed that the railroad company should put the outside of. the building in ·repair, and the foundations ·and ·adjoining walls in repair, and make it safe, which they promised to do, and the church would, at the expense of the railroad company, improve and refit the interior wall—that is, the plaster, the windows, &c.' * * * This agreement between the church and the railroad company, although in parol, was competent evidence."

"Through negotiations * * * it was arranged in the year 1881 that the railroad company should make the foundation and outer walls of the church safe and secure, and that the plaintiff should do the necessary repairs inside of the church at the expense of the railroad company."

### WHAT WAS DONE AFTER THE AGREEMENT?

"The railroad company did all the work outside. The inside work was done by the church. It cost $1,000, and the bills were presented by the church to the railroad company and the money paid.
* * * * * * * *
"The cut in the rear of the church is nineteen feet in depth, and the wall built by the railroad company is nineteen feet high, and is tapering, being eight feet wide at the bottom and eighteen· inches at the top. At the top of the wall the face is clear of the church property, but at the bottom it is five feet upon the church·property, leaving the wall at the base three feet in width on the property of the railroad company.
* * * * * * * *
"The digging out of the cut was the occasion for requiring the erection of a wall for the protection of the church property.
* * * * * * * *

"In· pursuance of this arrangement the railroad company paid for the repairs inside of the church and did certain work on the foundation and· outside walls which apparently made them secure, but which later proved to be insufficient for that purpose."

"The agreement was that the company was to build the wall at its own expense and make it safe. The wall contracted for was for the protection of the church property in the future, and not a mere temporary expedient. The location, dimensions and construction of the wall and the character of its foundation were committed to the exclusive control of the company."

### WHAT WAS THE CAUSE OF THE DAMAGE SUED FOR?

"In 1887 the south wall of the church had settled about eight inches, the floors had gone down and the gables had cracked, so that there was a large opening in each gable, involving a considerable outlay for reparation. The testimony on the part of the plaintiffs showed that the damage sustained in 1887 was the outcome of defects in the wall erected by the company in 1881, arising from a failure to properly secure the foundation to sustain the vibration caused by the running of the company's trains. For the damage thus sustained in 1887 this suit was brought. * * * The damage sued for in this case did not result from an unlawful act of the defendants in making the excavation in 1881. The digging out of the cut was the occasion for requiring the erection of a wall for the protection of the church property, but was not the cause of the injury which was subsequently sustained. Nor did the damages result from the building of the wall which was done by agreement between the parties. The wall was located by the company within four and a half feet of the track on which

"The retaining wall of the cut remains solid and unimpaired. up to the present time.

&ast; &ast; &ast; &ast; &ast; &ast;

"Some time after the work above mentioned was finished the walls of the church again began to crack and show signs of settling. The cause of this was that the railroad company had not carried the church foundation down below the bottom of the cut, and, as the soil was sandy and had been saturated with water, the cut acted as a drain which gradually drew away the moisture from the soil under the church foundation and caused the soil to shrink. * * * In the summer of 1887 the condition of the church, by reason of the settling of its walls, became so dangerous that the congregation could not safely continue to occupy it and was, therefore, obliged to hire other quarters until the edifice could be repaired. The reasonable cost of making the repairs rendered necessary by the settling of the walls from the cause aforesaid was as follows (stating items aggregating $3,850). In these repairs the plaintiff rebuilt the south wall of the church on a founda-

the company was to run its trains. The projection of the ties brought the force of the vibrations caused by the running of trains nearer to the wall. The evidence at the trial was that the wall was not properly underpinned, and the jarring of the trains passing kept jarring and settling it all the time. Thereafter, from time to time, injury was done to the church property. The injury and the cause of it continued until 1887, when the damages sued for in this case were sustained. The injury for which this suit was brought is entirely distinct from the injury arising from the first excavation, which was settled by the receipt of 1882. The injury which was embraced in that settlement was caused by the original excavation. The injury now sued for resulted from the defects in the wall as constructed in 1882. The wall did not become the property of the plaintiffs; it was part of a retaining wall, extending beyond the church property a considerable distance in both directions."

tion that went below the bottom of the cut and so prevented further drainage and made the edifice safe and secure."

In one place in the above quotation from the opinion of this court the date of the construction of the retaining wall built by the railroad company is stated as 1881 and in another place as in 1882; but it is perfectly plain that it was supposed that such wall was built after the making of the verbal agreement recited, and in furtherance of that agreement, and that it was supposed that the cause of the damage sued for was the improper construction of that wall, whereby it settled from vibration caused by the running of trains in the cut—thus indirectly causing a settlement of the church edifice. Indeed, it is not quite clear that it was not supposed that the foundation wall of the church was made part and parcel of the retaining wall. The express finding at the second trial

was that the construction of the retaining wall preceded the verbal agreement; that the retaining wall has always remained solid and unimpaired and that the damage to the church edifice was caused first by the original excavation and later by the underground drainage into the walls of the cut. Clearly so far the only liability of the railroad company to the church was in encroaching with its excavation upon the church lands. Had there been no encroachment the church would have had no cause of action against it. *McGuire* v. *Grant,* 1 *Dutcher* 356, approved in this court; *Schultz* v. *Byers,* 24 *Vroom* 442. It was because such encroachment, for the purpose of affording sufficient width at the base for the retaining wall, was a part of the design of the walled cut that no defence of independent contract could have been interposed; hence the verbal agreement made with the church had sufficient legal consideration.

The finding of fact on the second trial is silent as to any vibration caused by the running of trains, and properly so, because any finding on that point would have been irrelevant when it had been found that the retaining wall remained solid and unimpaired. For the normal results of the operation of a railroad an adjoining landowner has no redress. *Beseman* v. *Pennsylvania Railroad Co.,* 21 *Vroom* 235; *affirmed,* 23 *Id.* 221. Besides the finding that the cause of the damage was the underground drainage excludes any other cause.

For the trespass of the original excavation satisfaction was made. Chief Justice Depue so says and reiterates. After reciting the receipt of January 9th, 1882, he declares: "This receipt was unquestionably a discharge of all damages sustained by the church up to its date." Again he says: "The injury for which this suit was brought is entirely distinct from the injury arising from the first excavation, which was settled by the receipt of 1882. The injury which was embraced in that settlement was caused by the original excavation. The injury now sued for resulted from the defects in the wall as constructed in 1882." Of course, for the mere underground drainage into the cut, which, as walled, is en-

tirely on the railroad lands, the church never had a cause of action and none is claimed for it. On the erroneous supposition that the retaining wall was constructed in furtherance of the verbal agreement recited the learned Chief Justice held, and this court stands committed to the doctrine, that the railroad company was liable in tort for its continued maintenance in a defective condition. He did not put the case on a breach of the agreement. The agreement itself was mere matter of inducement. He speaks of it simply as "competent evidence." Right or wrong, his doctrine cannot be questioned, and I do not question it, although, in order to apply it, the plaintiffs' declaration must be considered as if amended. He assumed that the retaining wall was built by agreement of the parties. Undoubtedly its encroachment, at its base, on the church land was tacitly assented to in the settlement of January 9th, 1882. If it were the fact that it had been defectively constructed, as erroneously supposed by the Chief Justice, it would be just to hold that the statute of limitations would not begin to run until resulting damage ensued. I find no fault in the declaration of law which is the gist of the former decision of this court, as follows: "The wall did not become the property of the plaintiffs; it was part of a retaining wall extending beyond the church property a considerable distance in both directions. No action could have been maintained by the plaintiffs to recover damages by reason of its defective construction until damage actually occurred. * * * The injury sustained by reason of the defective construction of the wall, as it was located, was a continuing injury. It is quite clear that if a suit had been brought in 1882 the plaintiffs could not have recovered in such a suit for the damages which would be sustained in 1887. It would have been impossible at that time to have anticipated the future deterioration in the wall and the damages arising therefrom, and to have made an estimate of the amount thereof as the basis of computation. Compensation in such a suit must be sought after the damages are sustained."

Except *Warwick* v. *Hutchinson,* 16 *Vroom* 61, where the contract was for indemnity, and, of course, was not broken

until the plaintiff was damnified, the cases cited by the Chief Justice were all of torts independent of contract and where the wrong was continuous. Those cases exemplify the maxim *sic utere, tuo ut alienum non lædas,* which is as applicable to continuance as to commission of wrong.

Chief Justice Depue would never have held that an action in tort for breach of an agreement to make safe the foundation wall of the church, even though the breach may have been by negligence in attempted performance of the agreement, could stand against a plea of the statute of limitations. It would, indeed, be as novel to assert that the statute would not bar an action for negligence, in a contractor, in performing work agreed for, if, before suit brought, six years from the time of the negligence had elapsed, no matter when the actual damage arose, as to assert that a passenger on a railway train, derailed through negligence, could successfully maintain an action for personal injury, against the bar of the statute, if pleaded, on showing that actual damage only ensued long after the occurrence.

It is well settled that, in the case of torts arising *quasi e contractu,* the statute begins to run from the date of the tort, not from the occurrence of actual damage. Ignorance of the facts on the part of a plaintiff will make no exception to the rule, though he discovers his injury too late to have a remedy. *Wood Lim. (3d ed.),* §§ 177, 179.

It will be most unfortunate if this salutary doctrine be disturbed by the present decision, as I fear it will be. Judge Vroom, though noticing the confusion in the former opinion read for the court, declares that, despite that confusion, the doctrine of the opinion applies to a supposed tort arising from an agreement relating solely to the church wall.

The right of recovery previously sustained was for the negligent construction of a wall standing partly on the land of the church and partly on the land of the railroad company, built under circumstances raising a duty of perpetual maintenance by the company. The present case shows no such condition. The trial judge, in view of the confusion resulting from the misapprehension of fact of the late Chief Justice,

prudently ordered judgment for the plaintiffs below, but this court is under no constraint in the premises, and ought not, by reason of a supposed necessity to respect its own decision, to affirm a judgment which an examination of the votes on the previous hearings in the Supreme Court and in this court will show is contrary to the deliberate judgment of nine of its sixteen members.

I am authorized to say that the Chancellor and Mr. Justice Garretson concur in this opinion.

*For affirmance*—THE CHIEF JUSTICE, FORT, HENDRICKSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM.   9.

*For reversal*—THE CHANCELLOR, COLLINS, GARRETSON.   3.